OPINION *Page 2 
{¶ 1} Defendant-appellant/cross-appellee Tricia Schaefer, NKA Tricia Mekoleske, ("Wife") appeals the Septemer 14, 2007 Final Entry entered by the Stark County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce, divided marital assets and debts, and allocated parental rights and responsibilities. Plaintiff-appellee/cross-appellant is Matthew Schaefer ("Husband").
 STATEMENT OF THE FACTS AND CASE {¶ 2} Husband and Wife were married on September 2, 1995. Two children were born as issue of said union, to wit: Myah (DOB 6/5/99) and Kylie (DOB 7/3/03). Husband filed a Complaint for Divorce on November 29, 2005. Therein, Husband alleged Wife was guilty of gross neglect of duty and extreme cruelty, and the parties were incompatible. Wife filed a timely answer and counterclaim for divorce, also alleging gross neglect of duty and extreme cruelty, as well as incompatibility.
 {¶ 3} The Magistrate issued temporary orders on January 4, 2006. Pursuant to the order, Husband was required to pay $275.00/month/child for child support and maintain health insurance for the children. Husband was granted exclusive use of the marital residence, and ordered to pay the mortgage, taxes, and insurance thereon. Husband was also ordered to pay the premiums on the auto insurance policies, pay the MBNA account, and the loan on the Kabuta tractor. Wife was ordered to pay her Capital One account, her auto loan, and school loans. The children resided with Wife, and Husband had companionship on alternating weekends. After a pretrial conference on April 3, 2006, the trial court appointed Susan Burns as guardian ad litem for the *Page 3 
children. The trial court ordered the parties to split the cost of the guardian ad litem equally.
 {¶ 4} On May 12, 2006, Wife filed a Motion for Ex-Parte Order, moving the trial court to suspend the temporary shared parenting plan as Myah's counselor reported to Wife her belief the child was the victim of sexual abuse at the hands of Husband. On the same day, the trial court issued a Judgment Entry Ex-Parte, ordering Husband to have no contact with both children. The magistrate conducted a hearing on May 23, 2006, after which Husband and Wife were ordered to undergo psychological evaluations and the children were placed in the home of the paternal grandmother, Catherine Cibella. The magistrate further granting Husband and Wife alternating week to week companionship with the children. The magistrate terminated the child support order as well as the no contact order between Husband and the children. The children remained with paternal grandmother until August, 2007.
 {¶ 5} Following the placement of the children with paternal grandmother, Wife accepted a nursing position in Lorain County, Ohio. Wife moved into her parents' residence in Lorain County. Wife continued to exercise visitation with her daughters, spending days at a time at paternal grandmother's home.
 {¶ 6} The matter came on for a final hearing on August 15, 2007. The trial court heard five days of testimony, concluding the matter on August 22, 2007. The trial court issued its Final Entry on September 14, 2007, granting the parties a divorce on the grounds of incompatibility. The trial court divided the parties' marital assets and debts, and ordered Husband to pay Wife $1568.00 to achieve equity in the division of the property. The trial court awarded Wife an additional $1540.00 on the proceeds of the *Page 4 
sale of the marital residence to offset the amount by which Husband had increased the home equity line of credit during the proceedings. The trial court designated Husband the residential parent and legal custodian of Myah and Kylie. Wife was to have continuous, consistent and frequent contact with the girls. Wife was ordered to pay child support to Husband in the amount of $500.00/month. Wife, as the nonresidential parent, was permitted to take the children as dependents for income tax purposes.
 {¶ 7} It is from this judgment entry Wife appeals, raising the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN DESIGNATING APPELLEE PRIMARY RESIDENTIAL PARENT AND LEGAL CUSTODIAN OF THE MINOR CHILDREN.
 {¶ 9} "II. THE TRIAL COURT ERRED IN THE AWARD OF PROPERTY BETWEEN THE PARTIES.
 a. THE TRIAL COURT ERRED IN IT'S CALCULATION OF THE EQUITY IN THE KABUTA TRACTOR AND THE ALLOCATION OF THAT EQUITY.
 b. THE TRIAL COURT ERRED IN ITS ALLOCATION OF THE DEBT IT DETERMINED TO BE DUE AND OWING TO CATHY CIBELLA.
 c. THE TRIAL COURT ERRED IN ITS CALCULATION OF THE EQUITY DUE AND OWING TO THE APPELLANT FROM THE SALE OF THE MARITAL RESIDENCE.
 d. THE TRIAL COURT ERRED IN IT'S CALCULATION OF THE DEBT DUE AND OWING ON THE MBNA ACCOUNT AND THE ALLOCATION OF THAT DEBT. *Page 5 
 e. THE TRIAL COURT ERRED IN IT'S DETERMINATION OF VALUE OF THE ASSETS OF TDT INC. AND AWARD OF EQUITY IN THE TDT ASSETS.
 f. THE TRIAL COURT ERRED IN ITS VALUATION AND AWARD OF THE WEAPONS OWNED AND ACQUIRED BY THE PARTIES DURING THE MARRIAGE.
 1. THE TRIAL COURT ERRED IN FAILING TO ACCEPT THE VALUATION OF THE WEAPONS PROVIDED BY THE EXPERT TESTIMONY OF DAVID HOLDEN.
 2. THE TRIAL COURT ERRED IN FINDING WEAPONS TO BE THE SEPARATE PROPERTY OF THE APPELLEE.
 {¶ 10} III. THE TRIAL COURT ERRED IN FAILING TO FIND THE APPELLEE GUILTY OF FINANCIAL MISCONDUCT AND BY NOT AWARDING TO APPELLANT A DISTRIBUTIVE AWARD.
 {¶ 11} IV. THE TRIAL COURT ERRED IN ITS AWARD OF FEES TO THE GUARDIAN AD LITEM.
 {¶ 12} V. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES AGAINST APPELLANT AND IN FAVOR OF APPELLEE.
 {¶ 13} VI. THE TRIAL COURT ERRED IN FAILING TO FIND THE APPELLEE GUILTY OF CONTEMPT.
 {¶ 14} Husband cross/appeals, assigning as error: *Page 6 
 {¶ 15} "I. THE TRIAL COURT ERRED IN DEVIATING THE AMOUNT OF CHILD SUPPORT TO BE PAID BY APPELLANT AND GRANTING TO HER THE TAX EXEMPTIONS FOR BOTH MINOR CHILDREN."
 Appeal I {¶ 16} In her first assignment of error, wife maintains the trial court erred in designating Husband as the primary residential parent and legal custodian of Myah and Kylie.
 {¶ 17} Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such decision must not be reversed absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418 (Citation omitted). In Bechtol v. Bechtol (1990),49 Ohio St.3d 21, the Ohio Supreme Court held: "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." Id. at syllabus. The reason for this standard of review "is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Davis, supra at 418. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 81. *Page 7 
 {¶ 18} In allocating parental rights and responsibilities, the trial court must consider the best interest of the children. R.C. 3109.04(F)(1) sets forth the factors a trial court must consider when making such a determination, and reads, in pertinent part:
 {¶ 19} "In determining the best interest of a child pursuant to this section, * * *, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 20} After reviewing the entire transcript in this matter as well as the record, we find the trial court's decision to designate husband as the residential parent and legal custodian of the girls was supported by competent credible evidence.
 {¶ 21} Susan Burns, the guardian ad litem, initially recommended the girls be placed with their maternal grandmother and the parties undergo psychological *Page 8 
evaluations. Both parties participated in individual counseling. Husband completed therapy in January, 2007. Wife continued her individual counseling throughout the course of the proceedings.
 {¶ 22} Dr. Patricia Milsap-Linger testified she conducted the court ordered psychological evaluations of Husband and Wife approximately one year prior to the final hearing. Wife's profile was reflective of hysteria, which Dr. Milsap-Linger described as being over reactive to a given situation or stimuli in a manner greater than what would be expected from the average person. Dr. Milsap-Linger also found Wife had a high need for approval and had a submissively dependent personality. After completing Wife's evaluation, Dr. Milsap-Linger's primary concern was Wife's inability to see and understand how her behavior impacts the children. The doctor remarked this concern could be eliminated if Wife addressed the issue with a professional. Husband's personality profile indicated he was a person who struggles to maintain control over his impulses, and who is egocentric and self-indulging. Husband's general potential for anti-social behavior was above average. He lacked awareness of the ways he upsets and provokes other people. On cross-examination, Dr. Milsap-Linger conceded Husband's work history, which revealed no difficulties at work, no reports of excessive force and high recommendations, would indicate he is able to control his impulses.
 {¶ 23} Following the psychological evaluations with Dr. Milsap-Linger, Husband began therapy with Dr. Dennis Ward, a clinical counseling psychologist specializing in family and marriage counseling. Dr. Ward met with husband on seven occasions over a period of approximately six months, commencing in August, 2006. Although Husband and Dr. Ward discussed stress management, the doctor's main focus was to assist *Page 9 
Husband in working with Wife in the best interest of the children. Dr. Ward noted Husband's distress over findings made by Dr. Milsap-Linger based upon the personality tests administered to Husband and Wife because Husband believed the findings were not assessed in the context of the individuals and their occupations.
 {¶ 24} Susan Calloway, a clinical social worker, met with Wife approximately ten times between May, 2002, and September, 2002. During the sessions, Wife discussed having been physically abused by her brother, and sexually abused by an older adult male when she was a child. Wife also discussed Husband's abusive behavior during sex, which she described as becoming worse and making her fearful. In November, 2005, Wife again presented to Calloway regarding the deterioration of the marriage. Wife discussed Husband's aggression, describing an increase in his anger and rage, and an increase in sexual abuse. Calloway observed bruises on Wife's wrists, ankles, and chest. Wife continued to see Calloway on an alternating weekly schedule throughout the course of the proceedings. Calloway and Wife addressed the concerns raised by Dr. Milsap-Linger in her report. Calloway expressed her belief Wife did not have any mental health issues which would prevent her from, or impact her ability to parent the children in a positive way. Over the course of the proceedings the guardian ad litem personally observed behaviors by Wife which confirmed the concerns raised by Dr. Milsap-Linger through her evaluation of Wife. The guardian's observations of Husband did not reveal any of the concerns raised by Dr. Milsap-Linger.
 {¶ 25} Wife references the testimony of numerous expert and lay witnesses to support her position Husband should not have been designated the residential parent, as those witnesses expressed "grave concerns" about Husband. The testimony to *Page 10 
which Wife refers, are actually answers given by the witnesses to hypothetical questions posed by Wife's counsel in which the witnesses were asked to suggest the behavior of an individual with Husband's personality profile as determined by Dr. Milsap-Linger in her psychological evaluation. Theses witnesses did not observe Husband manifesting these behaviors. Further, the investigations into the allegations of physical and sexual abuse by Husband on the children revealed such to be unsubstantiated.
 {¶ 26} Although recognizing the positive relationship Myah and Kylie have with their maternal grandparents and Wife's extended family, the evidence established the girls have an extremely strong relationship with their paternal grandmother, Caterine Cibella, with whom they had lived with for over one year. Paternal grandmother played a significant role in the daily lives of the girls, providing them with a loving and nurturing environment during a most tumultuous time in their short lives. The trial court found this bond to be of such import to weigh heavily in favor of the girls remaining in Stark County. The school counselor did admit Myah would probably excel anywhere. However, the girls are well adjusted and doing well in their current respective programs. The trial court placed significant weight on the children's need for stability and continuity.
 {¶ 27} Based upon the foregoing, we do not find the trial court abused its discretion regarding custody. Wife's first assignment of error is overruled.
 II {¶ 28} In her second assignment of error, wife maintains the trial court erred in its division of the parties' property. Wife challenges the trial court's calculation and allocation of the equity of six items: the Kabuta tractor, a debt due and owing to paternal *Page 11 
grandmother, the sale of the marital residence, the MBNA credit card account, the assets of a business known as TDT Inc., and the weapons.
 {¶ 29} R.C. 3105.171, which governs the division of marital property, provides, in pertinent part:
 {¶ 30} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."
 {¶ 31} The standard for appellate review of a domestic relations court's division of assets and debts is the abuse of discretion standard, which is set forth supra. Further, and again as with assets, in allocating debts between the parties "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 97,518 N.E.2d 1197. The Calculation and Allocation of the Equity in the KabutaTractor
 {¶ 32} Pursuant to the trial court's temporary orders issued in January, 2006, Husband was ordered to pay the loan on the tractor. Via Judgment Entry filed November 27, 2006, the trial court permitted Husband to refinance the tractor, for which he received $5887.00. Wife contends if Husband had not refinanced the tractor and continued to pay the monthly loan payments, the equity in the tractor would have been approximately $12,520.00. Wife arrives at this figure utilizing $15,000.00 as the fair *Page 12 
market value of the tractor which she determined through eBay. The trial court found the fair market value of the tractor to be $12,000.00. Husband presented evidence from a local dealer in support of that amount. As of the date of the final hearing, the balance due on the loan was $9000.00, leaving an equity in the tractor of $3000.00.
 {¶ 33} Initially, we note the trial court had competent credible evidence from which it could reasonably place a fair market value on the tractor at $12,000.00. The trial court found Husband refinanced the tractor with permission from the trial court, and utilized the money from the refinancing to pay "martial obligations, credit cards, co-pays, Dr. Humpries, the medical doctor, the line of credit and assist in payments to his mother for child car; all marital obligations." Sept. 14, 2007 Final Entry at 13. Accordingly, we find the trial court did not abuse its discretion in calculating and allocating the equity of the Kabuta tractor.
 Allocation of Debt Due and Owing Cathy Cibella {¶ 34} The trial court found $7292.00 was due and owing to the paternal grandmother, Cathy Cibella, and found that debt to be marital. Wife submits she gave grandmother $400.00/month for a total of $6000.00 over the course of the proceedings, and the trial court failed to credit her with the contribution. Accoding to Wife, Husband only contributed $3873.00, at most.
 {¶ 35} Following the placement of the girls with grandmother, neither Husband nor Wife was ordered to pay support. Wife was ordered to reimburse grandmother for the child support she received in the month of June. Grandmother presented evidence *Page 13 
of the debt she incurred while the children were in her care, which included school expenses and expenses for extra-curricular activities.
 {¶ 36} We find the trial court did not abuse its discretion in determining the obligation to grandmother to be a marital debt. Grandmother expended money for the benefit of Myah and Kylie. Money Wife and/or Husband would have spent if the girls lived with one or both of them. Further, the monies Husband and Wife paid to grandmother while the girls were in her care can properly be considered gifts. Accordingly, we find the trial court also did not abuse its discretion in failing to credit mother with monies she provided to grandmother.
 The Calculation of the Equity from the Sale of the Marital Residence {¶ 37} When the trial court issued temporary orders in January, 2006, Husband bore the responsibility for the home equity line of credit. The balance due and owing due on the equity line was approximately $33,480.00. Husband continued to use the home equity line during the course of the proceedings. Wife explains if Husband had paid the $520.00/month loan payments, the balance on the equity line of credit would have been $28,864.00 at the time of the final hearing. Instead, Husband increased the line of credit to $35,020.00. Wife submits as a result of Husband's use of the equity line, she received less equity when the marital residence was sold.
 {¶ 38} After the marital residence was sold, the proceeds in the amount of $14,319.00 were placed in escrow. The trial court awarded Wife $8699.50, which represented her one-half interest in the proceeds, plus an additional $1540.00, the amount by which Husband increased the equity line of credit. *Page 14 
 {¶ 39} Husband testified it was necessary for him to utilize the line of credit to meet his financial obligations under the temporary orders relative to the payment of bills. The trial court found the $1540.00 increase in the debt was not authorized, found such to be non-marital, and assigned the obligation to Husband. The trial court recognized Wife's argument if Husband had paid the line of credit without using it further, the balance would have decreased to $28,500.00, resulting in her losing equity. We find the trial court did not abuse its discretion in only assigning $1500.00 as husband's separate obligation.
 D. The Calculation and Allocation of the Debt on the MBNA Account {¶ 40} Pursuant to the temporary orders, Husband was required to pay the obligation on the MBNA credit card account, which had an outstanding balance of $8300.00. Wife contends if Husband had made the minimum payment each month the marital debt of $8300.00 would have been reduced to $5618.00 at the time of the final hearing. She adds, as a result of Husband's failure to pay on the balance, she was imposed with additional financial responsibility in the amount of $1341.00. Wife arrives at this figure by subtracting $5618.00, the amount which would have been owed on the account if Husband had made minimum payment, from the original balance of $8300.00, then dividing the remainder ($2682) in half.
 {¶ 41} The trial court found, and Husband conceded, he used the MBNA credit card for personal use, increasing the balance due to $15,759.00. Husband acknowledged he was responsible for this obligation and it should not be considered a marital debt. The trial court allocated the entire original balance of $8300.00 to Husband. The court imposed a financial responsibility in the same amount to Wife. If *Page 15 
Husband had paid down the debt on the MBNA account to $5618.00, Wife would have been responsible for other martial debt only totaling $5618.00. Thus, Wife ended up with an additional $1341.00 in financial obligations. We find the trial court should have given Wife credit in this amount. This portion of Wife's assignment of error is sustained.
 E. The Determination of the Value of the Assets of TDT,Inc. and Award of Equity Therein. {¶ 42} Husband and Wife were 50% owners of TDT, Inc. Another individual, Jeff Carper, owned the other 50% of the business. Wife submits the cost and replacement value of the business assets was $22,450.00. Wife asserts the trial court arbitrarily assigned a value of $6000.00 to the TDT assets with no evidence to support that figure.
 {¶ 43} The trial court determined the assets of the business to be a home computer and fax machine, located at Carper's residence; a laptop computer in Husband's possession; two vehicle brush guards; targets; six to eight portable steel targets; simulation weapons; a computer printer; and protective gear including facemasks. The only assets appraised were the simulated weapons at $2200.00. Based upon the description of the items, the trial court found a reasonable value to be $6000.00. The trial court noted the company had not shown any yearly profits and had no marital value other than the value of the assets. Husband testified the business had not made a profit since its inception and he was still paying the expenses of the business out of pocket.
 {¶ 44} Although the cost to replace the assets might very well be over $22,000.00 as Wife contends, we find replacement value is not equivalent to actual value. The trial *Page 16 
court was not required to use replacement value and did not abuse its discretion in determining the value of the assets of TDT using an actual value method.
 F. The Valuation and Award of the Weapons. {¶ 45} Wife argues the trial court erred in determining the majority of the weapons were Husband's sole separate property and awarding such to him.
 {¶ 46} Pursuant to R.C. § 3105.171(B): "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 614, 709 N.E.2d 208.
 {¶ 47} The characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and the characterization must be supported by sufficient, credible evidence. See, McCoy v. McCoy (1995), 105 Ohio App.3d 651, 654, 664 N.E.2d 1012;Kelly v. Kelly (1996), 111 Ohio App.3d 641, 676 N.E.2d 1210. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under the more deferential abuse of discretion standard. R.C. 3105.171(D).
 {¶ 48} R.C. § 3105.171 (A)(6)(a)(ii) defines "separate property" as follows:
 {¶ 49} "`Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: *Page 17 
 {¶ 50} "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 {¶ 51} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 52} "* * *
 {¶ 53} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse."
 {¶ 54} Upon our review of the record, we find the trial court's characterization of the weapons as separate property is supported by sufficient, credible evidence, and the trial court's distribution of those assets to Husband was not an abuse of discretion.
 {¶ 55} Based upon the foregoing reasons, Wife's second assignment of error is overruled in part and sustained in part.
 III {¶ 56} In her third assignment of error, Wife contends the trial court erred in failing to find Husband guilty of financial misconduct and failing to make a distributive award. Wife submits the evidence established Husband liquidated or secreted marital assets shortly before or immediately after he initiated the divorce action; removed furniture and tools from the marital residence; improperly used the home equity line of credit; overdrew Wife's account, caused her life insurance policy to be cancelled; and withdrew equity from the Kabuta tractor; and secreted the equipment of TDT, Inc. thereby avoiding an appropriate appraisal. *Page 18 
 {¶ 57} Pursuant to R.C. 3105.171(E)(3), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 58} As the inclusion of the term "may" in R.C. 3105.171(E)(3) indicates, the decision regarding whether to compensate a party for the financial misconduct of the opposing party is discretionary with the trial court. Leister v. Leister (Oct. 23, 1998), Delaware App. No. 97CA-F-07027, unreported. Therefore, a trial court's decision on this issue will not be reversed on appeal absent a showing of an abuse of discretion; i.e. a showing that the trial court's decision is arbitrary, unreasonable or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140.
 {¶ 59} During the hearing, Husband provided extensive testimony regarding his financial actions throughout the proceedings. The trial court obviously found Husband's testimony credible, concluding Husband did not engage in financial misconduct. We cannot say the trial court's decision was an abuse of discretion.
 {¶ 60} Wife's third assignment of error is overruled.
 IV {¶ 61} In her fourth assignment of error, wife asserts the trial court erred in awarding fees to the guardian ad litem. Wife sets forth a litany of alleged deficiencies which evidence the guardian's "ineptness". *Page 19 
 {¶ 62} When reviewing a trial court's order regarding compensation to a guardian ad litem, an appellate court applies the abuse of discretion standard of review. Robbins v. Ginese (1994), 93 Ohio App.3d 370, 372,638 N.E.2d 627 (Citations omitted).
 {¶ 63} Civ. R. 75(B)(2) provides for the appointment of a guardian ad litem and legal counsel to a child when it is essential to protect the interests of the child. The appointment is within the sound discretion of the trial court and the court has broad authority to tax as costs the guardian ad litem fees. Pruden-Wilgus v. Wilgus (1988),46 Ohio App.3d 13, 545 N.E.2d 647. "Inherent in the trial courts authority to appoint a guardian ad litem and tax the fees as costs is the authority to set a reasonable value for the services rendered." Beatley v. Beatley, Delaware App. No. 03CAF02010, 2003-Ohio-4375 at ¶ 7.
 {¶ 64} We find the trial court's approval of the guardian ad litem's requested fees and the division of the fees between Wife and Husband does not constitute an abuse of discretion. A review of the trial testimony of Attorney Susan Burns, the guardian ad litem as well as all of her reports belies Wife's assertion the guardian ad litem was somehow negligent in her work on this case. Trial counsel for Wife spent what amounts to 130 pages of transcript attempting to prove Attorney Burns' "ineptness". What we have found in reviewing that testimony is an enormous amount of time and effort spent by Attorney Burns in preparing this matter and determining what was in the best interest of Myah and Kylie. The fact Attorney Burns could have done more in Wife's opinion does not render the trial court's award of fees arbitrary unreasonable, arbitrary or unconscionable.
 {¶ 65} Wife's fourth assignment of error is overruled. *Page 20 
 V {¶ 66} In her fifth assignment of error, Wife challenges the trial court's award of attorney fees against her and in favor of Husband. Specifically, Wife contends the trial court's award of attorney fees in the amount of $10,000 was "incredulous" as the award was based upon the actions of her former counsel and not on inappropriate conduct on her part.
 {¶ 67} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359,481 N.E.2d 609. The court may decide on a case by case basis whether an award of attorney's fees is equitable. Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785, 2006-Ohio-5741, at paragraph 70. When the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion. Id.; see, also, Richardson v. Richardson (Dec. 28, 1988), Medina App. No. 1726, unreported, at 5. Upon appeal, the question for inquiry is whether the trial court abused its discretion. Rand, supra at 369.
 {¶ 68} R.C. 3105.73 provides:
 {¶ 69} "(A) In an action for divorce, * * * a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider * * * the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 70} On March 22, 2007, Chief Magistrate Sally A. Efremoff was scheduled to hear the trial in this matter. Husband, his attorney, and the guardian ad litem were *Page 21 
present in the courtroom at 8:00am. At 8:15am, the trial court received a call from the office of Attorney Gregory J. Moore, Wife's then-counsel, informing the trial court Attorney Moore was seriously ill and he was requesting a continuance. In a judgment entry dated March 22, 2007, the magistrate set forth findings of fact which included a timeline of the events in the case to that date. A review of those findings reveals the trial in this matter had been continued on at least three occasions due to the actions of Wife's attorney. Further, hearings with regard to interim concerns were repeatedly continued at the request of Wife's attorney. A settlement conference was scheduled, then continued, and then completely cancelled by Wife's counsel. Wife ignores all this and attempts to place the blame on the trial court for "firing" her attorney as well as Husband's actions which require her to file a number of motions to show cause.
 {¶ 71} While we recognize Husband's actions may have prompted Wife's attorney's to file motions to show cause, thus creating some delay in this matter, such pales in comparison to the unnecessary burdens placed upon the trial court as well as the unnecessary burdens and expenses placed upon Husband and his attorney. Accordingly, we are unpersuaded the trial court abused its discretion in awarding husband $10,000 in attorney fees under the facts and circumstances of this case.
 {¶ 72} Wife's fifth assignment of error is overruled.
 VI {¶ 73} In her final assignment of error, Wife argues the trial court erred in failing to find Husband guilty of contempt for violating the terms of the temporary orders and restraining orders. *Page 22 
 {¶ 74} We will not reverse the trial court's decision regarding contempt absent an abuse of discretion. Beltz v. Beltz, Stark App. Nos. 2005CA09193 and 2005CA09194, 2006-Ohio-1144. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore, supra.
 {¶ 75} Upon review of Husband's testimony regarding his actions relative to financial matters, we cannot find the trial court abused its discretion in failing to find him in contempt.
 {¶ 76} Wife's sixth assignment of error is overruled.
 Cross-Appeal I {¶ 77} In his sole assignment of error on cross-appeal, Husband maintains the trial court abused its discretion in allocating the dependent tax exemption to Wife.
 {¶ 78} R.C. 3119.82 provides, in pertinent part:
 {¶ 79} "Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes * * *"
 {¶ 80} The decision to allocate tax exemptions is a matter left to the sound discretion of the trial court. R.C. 3119.82 requires the trial court to consider any `relevant factor concerning the best interest of the children' in making such a decision. In re Custody of Lena, Keshee,and Kesalon Harris, Champaign App. Nos. 2005-CA-42, 2005-CA-43,2006-Ohio-3649. *Page 23 
 {¶ 81} In its September 14, 2007 Final Entry, the trial court stated:
 {¶ 82} "The non-residential parent [Wife] shall take the children as dependents for income tax purposes if all child support payments are current for the previous years as of January 31.
 {¶ 83} "In determining whether taxes would be saved by allocating the federal tax dependency exemption to the non-custodial parent, the Courthas reviewed all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state and local tax rates."
 {¶ 84} The trial court expressly stated it considered all relevant factors. We find no record demonstration to show otherwise. Accordingly, we find the trial court did not abuse its discretion in allocating the dependent tax exemption to Wife.
 {¶ 85} Husband's sole assignment of error is overruled.
 {¶ 86} The judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed in part, reversed in part and remanded for further proceedings in accordance with this opinion and the law.
 By: Hoffman, P.J., Farmer, J. and Delaney, J. concur *Page 24 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed in part, reversed in part and remanded for further proceedings in accordance with our Opinion and the law. Costs to be divided equally. *Page 1