OPINION
{¶ 1} Defendant-appellant, Steven D. Cross, appeals a decision of the Preble County Court of Common Pleas, Domestic Relations Division, regarding custody matters.
 {¶ 2} Plaintiff-appellee, Jennifer A. Cross, and Steven were married on November 9, 2002. Approximately one year later, the parties had a child. Jennifer filed for divorce on December 29, 2005. The trial court granted temporary residential parenting status to *Page 2 
Jennifer and allocated parenting time to Steven based on the court's standard parenting schedule. In Steven's counter-claim for divorce he requested sole custody, shared parenting, or liberal visitation rights. A few months later, Steven filed a motion for shared parenting wherein he outlined a parenting plan allowing each party to have the child three or four days each week alternating with the other parent.
 {¶ 3} The trial court granted Steven's next motion to have the parties submit to psychological evaluation in order to help resolve their parenting issues. That evaluation, which was conducted by Barbra Bergman, Ph.D., was completed in January, 2007 and accepted into evidence by the trial court on May 18, 2007. On November 20, 2007, the trial court designated Steven as the child's residential parent and legal custodian when Jennifer moved from Brookville, Indiana to Covington, Kentucky.
 {¶ 4} After three days of trial over the course of five months, testimony from both parties and several witnesses, and review of both parties' proposed findings and conclusions of law, the trial court issued its decision. The trial court's February 19, 2008 decision designated Jennifer as the child's legal and residential parent and gave Steven parenting time under the court's standard parenting schedule. On May 15, 2008, Steven moved for reconsideration arguing that the psychologist's report was stale and the sibling bond was no longer a factor to be considered by the trial court as Jennifer had given up primary custody of her first child.[1] The trial court overruled Steven's motion to reconsider, and a little over a month later issued a final judgment and decree of divorce. Steven filed an appeal raising three assignments of error.
 {¶ 5} Assignment No. 1:
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING STEVEN *Page 3 
CROSS' MOTION TO RECONSIDER, OR FOR AN ADDITIONAL HEARING TO CONSIDER NEW EVIDENCE THAT [THEIR CHILD'S] SISTER NO LONGER RESIDED WITH JENNIFER, SINCE THAT SIBLING BOND WAS A MAJOR FACTOR IN THE COURT'S CUSTODY AWARD."
 {¶ 7} In his first assignment of error, Steven argues that the trial court erred in designating Jennifer as the residential parent of their child. Steven contends that the trial court ignored the fact that Jennifer was no longer the primary custodian of her first child, since both the court and the court-appointed psychologist placed great emphasis on the sibling bond in their respective opinions.[2] We find no merit to Steven's argument.
 {¶ 8} A trial court has broad discretion in designating parental rights and responsibilities, thus the court's decision should not be reversed absent an abuse of discretion. Donovan v. Donovan (1996),110 Ohio App.3d 615, 618, citing Masters v. Masters, 69 Ohio St.3d 83, 85,1994-Ohio-483. Abuse of discretion is more than an error of law or judgment it implies that the trial court was unreasonable, arbitrary or unconscionable in making its decision. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. So long as there is competent and credible evidence in the record, to support its custody determination, the trial court's decision will stand as they have the best opportunity "to view the demeanor, attitude, and credibility of each witness," which may not translate so easily to the written record. Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 9} A trial court is required to allocate parental rights and responsibilities for minor children pursuant to R.C. 3109.04. This includes whether the trial court chooses to designate one parent as the residential parent and/or legal custodian of a child, or whether the court *Page 4 
instead delegates those responsibilities to both parents under a shared parenting plan. Arthur v. Arthur (1998), 130 Ohio App.3d 398, 406. Of paramount concern, in any custody decision, is the requirement that the trial court's judgment be made in the best interest of the child.Glover v. Glover (1990) 66 Ohio App.3d 724, 730, citing Birch v.Birch (1984), 11 Ohio St.3d 85. A trial court must "consider allrelevant factors," including those set forth in R.C. 3109.04(F)(1) when determining what parenting arrangement is in the child's best interest.[3] (Emphasis added.) Sallee v. Sallee (2001),142 Ohio App.3d 366, 370. "[N]o one factor is dispositive. Rather, the court has discretion to weigh [any] relevant factors as it sees fit[]." Barber v.Barber, Columbiana App. No. 05 CO 46, 2006-Ohio-4956, ¶ 11.
 {¶ 10} Steven's argument is premised on the idea that the sibling bond was the primary rationale for the trial court's decision to award Jennifer custody of their child. This is simply not the case. While we note that both Bergman's report and the court's decision did place a great emphasis on that relationship, it is but one factor that the trial court considered when it made its custody determination.
 {¶ 11} In addition, to the sibling relationship, the trial court found that the child's interaction and interrelationship with her mother was "very good" and found that the child's interaction with her father was also "good." The court also noted that the child had adjusted to living with her mother, and sister, throughout most of the parties' separation. The trial court made reference to the mental health of all parties involved via reference to Bergman's *Page 5 
report. The court also found that both parents would honor and facilitate parenting time, although it noted Steven had failed to "show for all of the parenting time that was arranged." Although Jennifer's residence was outside the state, the trial court determined that it was still close to Steven.
 {¶ 12} Additionally, the trial court observed that both parents loved their daughter and each was capable of providing her with the care she required. The trial court also commented on Jennifer's new relationship and what affect it could have on the child, and specifically noted that there was no evidence that Jennifer's "social life [] adversely impact[ed] her obligation to care for her child." The trial court also stated Steven was a "good parent" who "has a sincere desire to apply his knowledge of children and the education of children to his effort to raise [the child]." The court further found that Steven was "ready, willing and able to care for the child" and that Steven's "life [wa]s more stable than [Jennifer's]." Lastly, the trial court found that Steven's desire to split parenting time equally between the parents was not feasible because it would undermine the stability and structure of the child's needs and because the parties had trouble communicating with one another.
 {¶ 13} Steven made the trial court aware of the changes in custody, with regard to Jennifer's first child, prior to the court issuing its final decree; however the trial court maintained its choice to make Jennifer the custodial and legal parent of the child. We cannot say that the trial court abused its discretion in making this decision. While the child's relationship with her sister will undoubtedly be influenced by the new arrangement between her mother and ex-spouse, it would have been equally affected had Steven been named the custodial parent or granted more time with the parties' daughter. Steven's first assignment of error is overruled.
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ABUSED ITS DISCRETION BY TAKING JUDICIAL *Page 6 
NOTICE OF THE CUSTODY EVALUATION WITHOUT FIRST CONSIDERING WHETHER IT COMPLIED WITH THE AMERICAN PSYCHOLOGICAL ASSOCIATION'S `GUIDELINES FOR CHILD CUSTODY EVALUATIONS IN DIVORCE PROCEEDINGS.'"
 {¶ 16} In his second assignment of error, Steven argues the trial court erred when it "judicially noticed" Bergman's evaluation as it did not conform to the American Psychological Association's (APA) guidelines thereby making the report unreliable. We need not reach the merits of Steven's argument, as we find he waived any error when he failed to raise this matter before the trial court.
 {¶ 17} Before reaching the issue of waiver, we take time to note that Steven is incorrect in his assertion that the trial court took judicial notice of Bergman's evaluation. During the trial, the following exchange took place:
 {¶ 18} "[Jennifer's trial counsel]: I would ask if the Court has received the psychological evaluation that was ordered and if the Court would take judicial notice of that.
 {¶ 19} "THE COURT: I have received it, and the Court has reviewed it, and it will be admitted into evidence."
 {¶ 20} Thus the trial court never judicially noticed Bergman's psychological evaluation and instead it merely admitted the evaluation into evidence.[4]
 {¶ 21} With regard to the claimed error, it is axiomatic that failing to raise an issue at the trial court level waives any error on appeal.Akron ex rel. Christman-Resch v. Akron, 159 Ohio App.3d 673,2005-Ohio-715, ¶ 36. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived *Page 7 
and may not be raised upon appeal." Stores Realty Co. v. City ofCleveland, Bd. of Bldg. Standards and Bldg. Appeals (1975),41 Ohio St.2d 41, 43. Therefore, "`[a]n appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'"Douglass v. Salem Community Hosp., 153 Ohio App.3d 350, 2003-Ohio-4006, ¶ 17, citing State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus.
 {¶ 22} After carefully reviewing both the trial transcripts and parties' filings, and despite Steven's assertion that he raised this issue, we are unable to find any reference to the APA or its guidelines in the proceedings before the trial court.[5] For these reasons, Steven's second assignment of error is overruled.
 {¶ 23} Assignment of Error No. 3:
"THE TRIAL COURT ABUSED ITS DISCRETION BY TAKING JUDICIAL NOTICE OF THE CUSTODY EVALUATION, AND IN NOT GRANTING STEVEN'S MOTION FOR RECONSIDERATION, SINCE THE EVALUATION WAS COMPLETED OVER EIGHT MONTHS BEFORE THE CONCLUSION OF THE CUSTODY HEARING, MAKING THE INFORMATION UPON WHICH THE RECOMMENDATION STALE [sic]."
 {¶ 24} In his final assignment of error, Steven argues the trial court erred when it "judicially noticed" Bergman's evaluation because the custody hearing was not completed until more than eight months after the evaluation was made.[6] We find no merit to Steven's argument. *Page 8 
 {¶ 25} "Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such decision must not be reversed absent an abuse of discretion." Schaefer v. Schaefer, Stark App. No. 2007CA00283, 2008-Ohio-3960, at ¶ 17, citing Davis v.Flickinger, 77 Ohio St.3d at 418 (ctation omitted). "It is well-established that in determining the best interest of a child, `[t]he evaluation of evidence and the credibility of witnesses is primarily for the trier of fact.'" Najmi v. Najmi, Lorain App. No. 07CA009293, 2008-Ohio-4405, ¶ 17, quoting Scarbrough v. Scarbrough (July 18, 2001), Lorain App. No. 00CA007743, 2001 WL 808974, at *1. "Furthermore, and most important, the responsibility of determining what specific parenting structure will serve a child's best interests rests with the trial court, not a psychologist's report and recommendation."Dannaher v. Newbold, Franklin App. No. 03AP-155, 2004-Ohio-1003, ¶ 91.
 {¶ 26} While it is certainly preferable to have a more timely psychological evaluation for use in a custody determination, the length of the process sometimes makes this objective impractical. In this case, the trial court was aware of the age of the evaluation when it issued its February 2009 decision. Specifically the court stated, "[e]ven though the report was prepared in January 2007, it paints a clear picture of the history of the parties, their involvement with the child, and their attempts to reconcile their differences regarding residential parent status." It is evident from this language that the trial court considered the timeliness of Bergman's evaluation when assessing its relevance, reliability and credibility and therefore, it did not abuse its discretion.
 {¶ 27} We are further guided by the Ohio Supreme Court when it stated, in another area of the law, "[a] finding of evidentiary staleness should always be approached cautiously. More relevant than the time at which a report was rendered are the content of the report and the question at issue." State ex rel. Hiles v. Netcare Corp., 76 Ohio St.3d 404, 407,1996-Ohio-169. *Page 9 
 {¶ 28} Finally, we note that in the September 20, 2007 hearing Steven's counsel made the following statement: "[y]our Honor, at the first hearing we stipulated to the admission of the report by Dr. Bergman. We're not disputing anything that's in the report * * *." If Steven did not voice any objections to the evaluation's age in September of 2007, then he should be precluded from arguing the report was stale upon appeal.
 {¶ 29} Steven's third assignment of error is overruled.
 {¶ 30} Judgment affirmed.
WALSH and RINGLAND, JJ., concur.
[1] Jennifer had primary residential parental custody of a daughter from her first marriage as of the time of her first divorce in 2001 until some point between February and May of 2008.
[2] Steven actually states that Jennifer gave up custody of her first child, when in actuality Jennifer merely gave up her status as the primary residential parent. She continues to share custody of her first child with her first ex-husband.
[3] The ten statutory factors, in R.C. 3109.04(F)(1), that the trial court must consider are as follows: "(a) The wishes of the child's parents regarding his care; (b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to his home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate visitation * * *; (g) Whether either parent has failed to make all child support payments * * * that are required of that parent pursuant to a child support order * * *; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *; (i) Whether the residential parent * * * has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence outside this state."
[4] Pursuant to Evid. R. 201 a court may only take judicial notice of "adjudicative facts" which are those facts "not subject to reasonable dispute" and "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Bergman's psychological evaluation does not fall within this definition and therefore could not have been judicially noticed.
[5] Even if this issue was raised at some point during trial, there is no requirement that the trial court had to review Bergman's evaluation in light of the APA guidelines because they are merely "aspirational in intent" and neither binding nor mandatory on the court.
[6] As we explained previously, the trial court never judicially noticed Bergman's psychological evaluation. *Page 1