[Cite as *Carr v. Carr*, 2016-Ohio-6986.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| DEVIN CARR, | : | |
| | | CASE NOS. CA2015-02-015 |
| Appellant/Cross-Appellee, | : | CA2015-03-020 |
| | : | O P I N I O N |
| - vs - | | 9/26/2016 |
| | : | |
| AMANDA CARR, | : | |
| Appellee/Cross-Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 13DR36836

Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for appellant/cross-appellee

Timothy A. Tepe, Dinsmore & Shohl LLP, 225 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202, for appellee/cross-appellant

**M. POWELL, P.J.**

{¶ 1} Plaintiff-appellant/cross-appellee, Devin Carr ("Father"), appeals a decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting defendant-appellee/cross-appellant, Amanda Carr ("Mother"), sole authority to make all non-emergency medical decisions regarding the parties' minor children, and granting the parties equal parenting time. Mother appeals the trial court's decision designating Father as

residential parent and legal custodian of the parties' children.

{¶ 2} The parties were married in August 2011. They have two children, a daughter born in April 2012 ("Daughter") and a son born in September 2013 ("Son"). In December 2013, Father filed for divorce. On December 10, 2014, a hearing on Father's divorce complaint was held before the trial court. The primary concern at the hearing was the allocation of parental rights and responsibilities for the children.

{¶ 3} Throughout the marriage, the family resided in a house belonging to Father and located in Morrow, Ohio. Although Father has a bachelor's degree in Family Studies and Mother has a bachelor's degree in Science and Family Studies, neither party was employed during the marriage. Rather, the family was supported by Father's annual annuity of $55,104.[1] The parties separated on Thanksgiving 2013.

{¶ 4} Two arguments precipitated the parties' separation. On the eve of Thanksgiving 2013, during an argument between the parties over how to properly warm up frozen breast milk, Father became so angry he punched a hole in a wall. At the time, Son was in his car seat beneath the hole and small pieces of dry wall fell on him. The next day, the parties invited their parents to their house for a Thanksgiving dinner. Father and Mother got into an argument when Mother kept trying to interfere with a private conversation between Father and his mother ("Paternal Grandmother"). Following an altercation during which everyone was yelling and the children were crying, Father left the marital home with his parents. When he later returned, the house was empty: Mother had vacated the marital residence with the children. Mother returned the children to Father and the marital home 11 days later.

---

1. Father suffered a brain injury as a child when he was hit by a pick-up truck while waiting for the school bus. As a result of a settlement, he receives an annual annuity of $55,104 for life. Father has never had a full-time job and has chosen not to work.

{¶ 5}  Mother moved to a two-bedroom apartment in East Price Hill, Cincinnati, Ohio, close to her mother's home.  Mother is currently a graduate student at Northern Kentucky University ("NKU") with evening classes twice a week.  She obtained a graduate assistantship at NKU that pays her $14.10 an hour for 20 hours a week.  The assistantship also provides her with six hours of tuition.  Mother testified it will take her two and one-half years to obtain her master's degree.  Ultimately, she intends to move to Northern Kentucky to be closer to her graduate school, assistantship, and church.  Mother does not believe the move will increase the driving distance to the place where the parties exchange the children for parenting time.

{¶ 6}  Following Father's divorce complaint and throughout the proceedings, the parties were granted parenting time with the children on a two-day rotating schedule.  Consequently, the parties exchanged the children every two days at noon at a gas station on Montgomery Road, Cincinnati, near I-275.  Both parties testified about problems at the exchanges.  Father complained that Mother refuses to speak to him about the children and that she never exchanges the children prior to noon, the time Father's parenting time begins, even if Mother and the children arrive early for the exchange.  Paternal Grandmother corroborated Father's testimony.  By contrast, Mother testified she arrives on time for the exchanges but that Father is angry because he arrives early and ends up waiting.

{¶ 7}  Mother testified the exchanges are always "violent."  Specifically, Mother claims that Father is angry, throws things belonging to the children at her, and yells and cusses at her in front of the children.  A bystander who was at the gas station during the November 4, 2014 exchange corroborated Mother's testimony.  The bystander testified that five minutes before noon, Mother was in her car getting the children ready to go when Father approached the car and started yelling, "You're cutting into my time," to which Mother replied, "it's not

even twelve yet." As Mother started getting Daughter out of the car, Father yanked the child out of Mother's arms and put her in his car. Father then grabbed Son as Mother was trying to hug and kiss the child, put the child in his car, slammed the children's shoes on the trunk of Mother's car, and drove off. The bystander also testified that "curse words were exchanged," Mother became upset she could not say goodbye to the children, and the exchange left Mother shaking and distraught. Father admitted snatching Daughter from Mother and grabbing Son out of Mother's arms during one of the exchanges.

{¶ 8} Father and Mother love their children and are bonded with them. The children are also bonded with their paternal and maternal relatives. However, the record shows that both parties have differing childrearing philosophies and practices which often clash. Each describe the other parent's care of the children as unhealthy and/or abusive and view their own parenting care as "the right way" to rear the children.

{¶ 9} Testimony at the hearing revealed that in June 2014, Daughter suffered a second-degree burn on her foot when Father put her on a hot stove so that she could watch the turn table in a microwave. Mother did not find out about the burn until the following day when the parties exchanged the children. Mother also testified Father has once left Daughter unattended in a bathtub, and that Daughter has fallen down the stairs several times under Father's supervision.

{¶ 10} The parties' main disagreement concerned whether the children suffered from constipation and the appropriate course of treatment. Mother testified that both children have an ongoing problem with constipation which she tries to address with diet and a laxative recommended by their pediatrician. Father does not believe the children are constipated. He has given the laxative to Daughter but stopped giving it, believing it made Daughter sluggish. Father admitted he stopped giving the laxative without first consulting the

pediatrician, despite an agreed entry ordering the parties to "comply with the recommendations of the children's doctor [o]n all matters regarding the children's health and well-being," and a subsequent entry from the trial court ordering the parties to "administer the laxative as suggested by the pediatrician until the pediatrician recommends otherwise." Father also testified that Mother is overprotective and tends to call the doctor's office or take the children there too often for many trivial reasons.

{¶ 11} Mother and Father were evaluated by a psychologist.  Based upon the evaluation, the psychologist expressed the opinion that both parties were appropriate parents and that there were no concerns about the ability of either to rear the children.  Nonetheless, she recommended that Father be designated residential parent and custodian of the children because Father is not employed, has no plans in the near future of being employed, and is therefore "available all the time to the children."  The psychologist stated that by contrast, Mother's availability to the children is curtailed as a result of her graduate studies and assistantship.

{¶ 12} The parties were divorced by decree on February 5, 2015.  Pursuant to the divorce decree, Father was designated as the residential parent and legal custodian of the children; the parties were granted equal parenting time on an alternating 2-2-3-day schedule as follows:

> Week I:
> Father: Monday at noon until Wednesday noon.
> Mother: Wednesday noon am until Friday noon.
> Father: Friday at noon am until Monday at noon.
>
> Week II:
> Mother: Monday at noon until Wednesday noon.
> Father: Wednesday noon until Friday noon.
> Mother: Friday at noon until Monday at noon.

Father was ordered to provide the primary health insurance for the children.  Mother was

designated as the sole parent "responsible for nonemergency medical decisions regarding the children [and] for scheduling any necessary appointments and providing transportation to and from said appointments. Mother shall consult with Father concerning these decisions and notify Father about the medical appointments, which he may attend[.]" Both parents were ordered to follow the instructions of the children's physicians.

{¶ 13} Father appeals, raising two assignments of error. Mother cross-appeals, raising one assignment of error.

{¶ 14} Mother's Cross-Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ABUSED ITS DISCRETION WHEN THE TRIAL COURT NAMED FATHER RATHER THAN MOTHER THE RESIDENTIAL PARENT AND CUSTODIAN OF THE MINOR CHILDREN.

{¶ 16} Father's Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT PROVIDED APPELLEE WITH THE SOLE DECISION-MAKING AUTHORITY REGARDING THE CHILDREN'S NON-EMERGENCY MEDICAL TREATMENT.

{¶ 18} Mother argues the trial court abused its discretion in designating Father as the children's residential parent and legal custodian, given Father's flashes of anger when the parties exchange the children, his failure to follow basic medical advice regarding the children, his belief Mother consults the children's pediatrician too often for trivial reasons, and his failure to ensure Daughter's safety.

{¶ 19} In turn, Father argues the trial court abused its discretion in granting Mother sole authority to make all nonemergency medical decisions regarding the parties' children. Specifically, Father first asserts the trial court's decision violates R.C. 3109.04(A) and is inconsistent with the court's designation of Father as the children's residential parent. Father

also asserts that the trial court's decision is an abuse of discretion given (1) the parties' inability to get along and cooperate, (2) the distance between the parties' homes, (3) the lack of evidence supporting the trial court's decision, and (4) the fact that Father provides health insurance for the children, so "there is nothing to stop [Mother] from 'running up' [medical bills]."

{¶ 20} A trial court's decision allocating parental rights and responsibilities will not be disturbed on appeal absent an abuse of discretion. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 21. "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 10. This is especially true in cases involving child custody, "since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." *Id.*

{¶ 21} R.C. 3109.04 governs a trial court's allocation of parental rights and responsibilities. As applicable here, R.C. 3109.04(A)(1) provides that

> the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

{¶ 22} "Of paramount concern, in any custody decision, is the requirement that the trial court's judgment be made in the best interest of the child." *Cross v. Cross*, 12th Dist. Preble No. CA2008-07-015, 2009-Ohio-1309, ¶ 9. In determining what parenting arrangement is in the child's best interest, the trial court must consider all relevant factors, including those set

forth in R.C. 3109.04(F)(1). *Id.* Those factors include (1) the wishes of the child's parents regarding the child's care; (2) the child's interaction and interrelationship with his or her parents; (3) the child's adjustment to his or her home; (4) the mental and physical health of all persons involved in the situation; and (5) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights. No one factor is dispositive. Rather, the trial court has discretion to weigh any relevant factors as it sees fit. *Id.*

**{¶ 23}** We first address Mother's argument that the trial court abused its discretion in naming Father as the residential parent and custodian of the children. Mother initially notes that the trial court did not issue a written decision and failed to mention the R.C. 3109.04(F) factors when deciding the issue of custody in the divorce decree.

**{¶ 24}** Although R.C. 3109.04(F) requires a trial court to consider the listed factors in determining what parenting arrangement is in the best interest of the child, "it is not necessary for the court to set forth its analysis as to each factor in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Coe v. Schneider*, 4th Dist. Washington No. 05CA26, 2006-Ohio-440, ¶ 32; *Smarrella v. Smarrella*, 7th Dist. Jefferson No. 14 JE 18, 2015-Ohio-837, ¶ 53 (trial court is only required to determine what is in the best interest of the child and to consider all relevant factors).

**{¶ 25}** In addition, a judgment entry may be general unless a party makes a specific request for separate findings of fact and conclusions of law pursuant to Civ.R. 52. *In re Carter*, 12th Dist. Butler No. CA99-03-049, 1999 WL 1015709, *4 (Nov. 8, 1999). Neither Father nor Mother made such a request. Consequently, in the absence of an affirmative showing to the contrary, we must presume the trial court did in fact consider all relevant factors, including the factors listed in R.C. 3109.04(F), and affirm the trial court's decision as

long as there is some evidence to support the decision. *Id.* at *4-5; *Sandlin v. Sandlin*, 12th Dist. Butler No. CA93-11-219, 1994 WL 519772, *1 (Sept. 26, 1994).

{¶ 26} After thoroughly reviewing the record, we find that the trial court did not abuse its discretion in designating Father as the residential parent and custodian of the children.

{¶ 27} The record shows that both parties are good parents who love their children and are bonded with them. Both provide loving and caring homes. However, because the parties did not seek shared parenting, it was incumbent on the trial court to designate one of them as residential parent and custodian of the children. At the close of the hearing, the trial court designated Father as the residential parent and custodian of the children, "subject to the equal parenting time," on the ground Father was the parent with most stability in his life. We find no abuse of discretion. Because Father is not employed, he is more available to the children. By contrast, Mother's graduate studies and assistantship make her less available to provide care for the children than Father. Father also lives in the home where the children have always lived.

{¶ 28} We are mindful of Mother's concerns regarding Father's failure to follow basic medical advice regarding the children and his belief Mother consults the children's pediatrician often. However, these concerns are alleviated by the trial court's decision designating Mother as the sole-decision maker for nonemergency medical decisions regarding the children, and by the court's grant of equal parenting time.

{¶ 29} We are likewise mindful of Mother's concerns regarding Father's anger during the exchange of the children and his failure to ensure Daughter's safety. With regard to the latter, the record does not indicate whether the trial court found Mother's testimony credible. As stated earlier, Mother never requested findings of fact and conclusions of law pursuant to Civ.R. 52. With regard to Father's anger during exchanges, the trial court addressed the

issue at the end of the hearing and (1) told both parties they needed to "grow up" (both parties were 28 years old at the time of the hearing), (2) required Mother to wear a recording device for the exchanges, in the event Mother believed there were problems, so that it would record what Father is saying or whispering, and (3) warned both parties the court would not tolerate any inappropriate behavior.

{¶ 30} We next address Father's argument the trial court abused its discretion in granting Mother sole authority to make all non-emergency medical decisions regarding the parties' children.

{¶ 31} Father first asserts that the trial court's decision violates R.C. 3109.04(A) and is inconsistent with the court's designation of Father as the children's residential parent because it makes it "impossible for [him] to fulfill his role as primary caretaker and legal custodian if his medical decision-making authority is stripped away from him."

{¶ 32} There are two ways under R.C. 3109.04(A) for parents to share parental rights and responsibilities. When the parents do not request shared parenting as is the case here, the trial court "shall allocate the parental rights and responsibilities for the care of the children *primarily to one of the parents*, designate that parent as the residential parent and the legal custodian of the child, *and divide between the parents the other rights and responsibilities for the care of the children*, including, but not limited to," child support and visitation. (Emphasis added.) R.C. 3109.04(A)(1).

{¶ 33} "Parental rights and responsibilities" is not defined in R.C. 3109.04. However, the phrase has been construed by the Ohio Supreme Court as synonymous with the phrase "custody and control." *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 22. "Custody resides in the party or parties who have the right to ultimate legal and physical control of a child. Therefore, parental rights and responsibilities reside in the party or parties

who have the right to the ultimate legal and physical control of a child." (Internal citations omitted.) *Id.*

{¶ 34} R.C. 3109.04 likewise does not define "residential parent" and "legal custodian." However, R.C. 3109.04(A) provides that if one parent is allocated the primary parental rights and responsibilities for the care of a child, that parent is designated the residential parent and legal custodian of the child. *Id.* at ¶ 23. "Therefore, the residential parent and legal custodian is the person with the *primary* allocation of parental rights and responsibilities. When a court designates a residential parent and legal custodian, the court is allocating parental rights and responsibilities." (Emphasis added.) *Id.*

{¶ 35} R.C. 3109.04(A)(1) plainly provides that the residential parent and legal custodian of the child is granted primary allocation of parental rights and responsibilities regarding the child, and not the sole allocation of these rights and responsibilities. Thus, while under R.C. 3109.04(A)(1) and "[f]or obvious reasons, the legal custodian and residential parent of children * * * is normally vested with the power to make non-emergency medical decisions[,] this is not a requirement of the law. The power may be shared between the legal custodian and residential parent, and the other parent." *Nicola v. Nicola*, 11th Dist. Lake No. 2014-L-062, 2015-Ohio-3540, ¶ 13. R.C. 3109.04(A)(1) contemplates that a trial court may do exactly what was done here. We therefore find no abuse of discretion.

{¶ 36} We further note that although Mother has sole authority over non-emergency medical decisions regarding the children, Father can nevertheless fulfill his role as primary caretaker and legal custodian of the children. Father retains significant authority as residential parent and legal custodian of the children, including the authority to determine the children's school, extracurricular activities, religious affiliation, and associations.

{¶ 37} Father also asserts that the trial court's decision is an abuse of discretion given

(1) the parties' inability to get along and cooperate, (2) the distance between the parties' homes, (3) the lack of evidence supporting the trial court's decision, and (4) the fact that Father provides health insurance for the children, so "there is nothing to stop [Mother] from 'running up' [medical bills]."

{¶ 38} Speculation that the parties will be unable to cooperate to implement the trial court's order does not render the order an abuse of discretion. The trial court was in the best position to determine if the parties could effectively implement the order. *See Rarden*, 2013-Ohio-4985 at ¶ 10 (the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude).

{¶ 39} Father asserts that the distance between the parties' homes will make scheduling and coordination of medical appointments difficult. However, the trial court's order makes Mother responsible for both scheduling the appointments and transporting the children to and from the appointments. Thus, any burden resulting from the distance between the parties' homes is borne exclusively by Mother. Further, under the grant of equal parenting time, the children reside with Mother half the time, making it more convenient for her to schedule the appointments during her parenting time with the children.

{¶ 40} Contrary to Father's assertion, there is evidence to support the trial court's determination that Mother is the more appropriate parent to make all non-emergency medical decisions regarding the children. Although Father claims there is no evidence that he neglects the children's medical needs, he testified he unilaterally stopped giving laxative to Daughter because he felt it made her sluggish. Father admitted he stopped giving the laxative without first consulting the pediatrician, despite an agreed entry ordering the parties to "comply with the recommendations of the children's doctor [o]n all matters regarding the children's health and well-being," and a subsequent entry from the trial court ordering the

parties to "administer the laxative as suggested by the pediatrician until the pediatrician recommends otherwise." Father defended his action by stating that the laxative was merely suggested, but not recommended, by the pediatrician. Father also testified he thought it was odd for Mother, a young woman who had never reared children before, to call the doctor's office whenever Mother had medical concerns and questions.

{¶ 41} Father finally asserts that Mother might take advantage of the fact he is required to provide the health insurance for the children to run up medical bills. However, the divorce decree plainly provides that "all co-pays, deductible costs required under the health insurance policy and all other uncovered health care expenses" must be paid 50 percent by Father and 50 percent by Mother, thus providing a disincentive for Mother to seek unnecessary medical treatment for the children. We also note that the divorce decree requires Mother to consult with Father regarding any non-emergency medical decisions and to notify Father about medical appointments, which he may attend if he so chooses, thus giving Father an opportunity to participate in the children's medical care.

{¶ 42} In light of all of the foregoing, we find that the trial court did not abuse its discretion in designating Father as the residential parent and legal custodian of the children and in granting Mother sole authority to make all non-emergency medical decisions regarding the parties' children.

{¶ 43} Father's first assignment of error and Mother's first cross-assignment of error are overruled.

{¶ 44} Father's Assignment of Error No. 2:

{¶ 45} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN THE WAY THAT IT DEVISED THE VISITATION SCHEDULE.

{¶ 46} Father argues the trial court abused its discretion in granting equal parenting

time to the parties in a 2-2-3-day alternating schedule because the parties reside in different school districts and one hour away from one another, and such schedule requires frequent exchanges of the children which, in turn, will require frequent contacts between the parties and increase the potential for further problems between them.

{¶ 47} A trial court has broad discretion in deciding visitation issues, and its decision will not be reversed on appeal absent an abuse of discretion. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 18. The court's primary consideration should always be the best interest of the child. *Shafor v. Shafor*, 12th Dist. Warren No. CA2008-01-015, 2009-Ohio-191, ¶ 9. "Whenever possible," the order or decree establishing a specific parenting-time schedule "shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child." R.C. 3109.051(A).

{¶ 48} In establishing a specific parenting-time schedule, a trial court is required to consider the factors set forth in R.C. 3109.051(D). *Bristow* at ¶ 16. The factors include: (1) the child's interaction and interrelationship with his or her parents; (2) the geographical location and distance between the parents' respective homes; (3) the child and parents' available time, including each parent's employment schedule; (4) the age of the child; (5) the child's adjustment to his or her home; (6) the health and safety of the child; (7) the mental and physical health of all the parties; (8) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; and (9) "any other factor in the best interest of the child." After considering the factors listed in R.C. 3109.051(D), the trial court, in its sound discretion, must determine what parenting time schedule is in the best interest of the child. *Bristow* at ¶ 16.

{¶ 49} Upon a thorough review of the record, we find the trial court did not abuse its

discretion in granting the parties equal parenting time in a 2-2-3-day alternating schedule.

{¶ 50} As stated above, pursuant to R.C. 3109.051(A), a parenting-time schedule must, whenever possible, afford both parents frequent and continuing contact with their child, unless such would not be in the best interest of the child. In the case at bar, the 2-2-3 alternating schedule, and consequently the number of weekly exchanges of the children, are a direct result of both the trial court's decision to grant equal parenting time to the parties *and* the parties' strong wish to see their children as often as possible.

{¶ 51} Indeed, the record shows that at the close of the hearing, the trial court stated its firm intention to grant the parties equal parenting time. Neither party objected. Subsequently, the trial court addressed the issue of the parenting time schedule as follows:

> I think the issue for you guys is, is how you want to do it. I can limit the exchanges to twice a week by dad on Monday and Tuesday, Mom on Wednesday and Thursday and then you alternate the weekends but if I [do] that you're going to not see the kids for up to five days uh … when it is not your weekend.
>
> The flip side is, is I can do a two, two, three, two, two, three uh… alternating schedule so that you got Monday, Tuesday, Tuesday, Wednesday…you got the weekend then * * * you just flip it. Monday, Tuesday, Tuesday, Wednesday and the other one's got the weekend and then you're not seeing the kids for three days so, Ms. Carr, * * * which do you want to do? There is no way else to do it because I'm going to give you equal parenting time so there is no other ways to do it so you're either going to limit the exchanges or you're not going to see the kids, potentially, for five days[.]

{¶ 52} The trial court then asked both parties, "what is your preference?" Both parties unequivocally replied they could not go five days without seeing their children. Thus, when given the choice between two possible parenting-time schedules, both parties explicitly chose the 2-2-3 alternating schedule. Given Father's clear preference at the hearing and his failure to seek a parenting-time schedule providing for less frequent exchanges and contact with Mother, he cannot now be heard to complain. That the trial court could have fashioned a

better parenting-time schedule does not render the current 2-2-3 schedule an abuse of discretion.

{¶ 53} Father also laments the trial court's failure to set a parenting-time schedule, such as the basic parenting-time schedule, for when the children will attend school. Father asserts that the current 2-2-3 schedule "will make it impossible for the children to attend school from [his] home," because the parties live in different school districts, it takes Mother one hour to drive the children to the exchange spot, and Mother intends to reside in Northern Kentucky.

{¶ 54} At the time of the hearing, the children were 32 months old and 15 months old respectively, and thus not of school age. We find the trial court did not abuse its discretion when it failed to set a parenting-time schedule to meet unknown future circumstances. In addition, this issue is not ripe for review. In general, a claim that rests upon future events that may not occur at all, or may not occur as anticipated, is not considered ripe for review. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 25. The issue of whether the current 2-2-3 schedule or the basic parenting-time schedule will be appropriate when the children attend school does not present a ripe issue for this court to review as the circumstances of the parties may change in the interim.

{¶ 55} The trial court therefore did not abuse its discretion in granting the parties equal parenting time in a 2-2-3-day alternating schedule. Father's second assignment of error is overruled.

{¶ 56} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.