[Cite as *K.L.F. v. E.A.B.*, 2024-Ohio-812.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| K.L.F. | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|     First Petitioner/Appellee-<br>    Cross Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2023 CA 00047 |
| E.A.B. | |
|     Second Petitioner/Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 01031 RPW |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 6, 2024 |


APPEARANCES:

| For First Petitioner/Appellee | For Second Petitioner/Appellant |
|---|---|
| DEBORAH L. KENNEY<br>DEBORAH L. KENNEY, L.P.A.<br>One South Park Place<br>Newark, Ohio 43055 | VICKY M. CHRISTIANSEN<br>CHRISTIANSEN CO, L.P.A.<br>172 Hudson Avenue<br>Newark, Ohio 43055 |

*Wise, J.*

{¶1}    Second Petitioner-Appellant father, E.A.B., appeals from the May 3, 2023 Judgment of the Common Pleas Court of Licking County, Domestic Relations Division.

{¶2}    First Petitioner-Appellee mother, K.L.F., cross appeals from the May 3, 2023 Judgment of the Common Pleas Court of Licking County, Domestic Relations Division.

### FACTS AND PROCEDURAL HISTORY

{¶3}    Appellant father and Appellee mother are the parents of M.I.B., who was born on March 9, 2011.  Father and mother never married and parentage was formally established by court judgment entry on August 16, 2012 when the Licking County Child Support Enforcement Agency filed a petition to adopt administrative determination of parentage.  On April 17, 2013, Father was ordered to pay $300 per month in child support, a deviation from the Child Support Guidelines Worksheet but agreed to by the parties.  Some three months later, the support was increased to $1,000 per month and orders were made relating to medical expenses and income tax dependency deduction for the child.[1]

{¶4}    There was no formal agreement relating to visitation and it was established on a voluntary basis by father and mother.  The record reflects that both parties and their extended families have participated in the caring and nurturing of M.I.B. since birth, allowing both mother and father to develop successful professions.  In 2019, father owned

---

[1] There was evidence in the record that the parties reached an agreement whereby father would provide a house for mother and M.I.B. to live in valued at $700 per month and father would pay, in addition, $300 per month in child support for the reason that mother could obtain financial assistance for college.

several dairy farms and a thriving cattle nutrition consultant to dairy farmers throughout the country, and mother was an accountant working for a local company. Father's businesses grossed incomes in the range of over one million dollars, and mother made approximately $81,000 as an accountant. Both parties married other partners and live in the same area in Central Ohio with no plans to move.

{¶5}　In October, 2019, father filed a motion for change of custody of M.I.B. or, in the alternative, a share- parenting plan that he had drawn up which essentially provided an equal amount of time for each parent with the child. Mother then opposed the motion and filed a motion to increase child support. These actions started a flurry of activity. Copious amounts of money have been spent by both parties on this litigation including deposition costs, attorneys' fees, guardian ad litem fees and expert witness fees. So too, the court in Licking County has spent a considerable amount of time assisting the parties in resolving their issues. Mediation has failed.

*Magistrate's Decision*

{¶6}　On January 4, 2021, September 14, 2021, December 6, 2021 and March 8, 2022, the Court's Magistrate held evidentiary hearings on the matters. The Magistrate heard testimony from the mother, father, various relatives, friends, accountants and the guardian ad litem. The guardian ad litem was available for cross-examination. An in-camera interview of the child was also held by the Magistrate in the guardian ad litem's presence.

{¶7}　On September 20, 2022, the Magistrate made a number of decisions regarding the issues before him. Magistrate's Decision, Sept. 20, 2022. The Magistrate

held a non-oral hearing in June, 2022 to consider child support calculations and a motion to strike an affidavit.

**{¶8}** With regard to custody, he recognized that no court had before the father's 2019 motion for custody made a finding regarding custody and therefore, the parents were treated as if on equal footing. Magistrate's Decision Sept. 20, 2022, Finding No. 8 at 15. After considering the evidence presented, including the report of the guardian ad litem and an in-camera interview with the child, the Magistrate found that it is in the best interest of M.I.B. for mother to be designated the sole residential parent and legal custodian of M.I.B. Magistrate's Decision, Sept. 20, 2022, Finding No. B (i) at 21.

**{¶9}** With regard to child support, he ordered father the child support obligor and to pay $3,000 per month together with cash medical support of $30.24 per month, effective "as of the date the Judgment Entry adopting this Decision is filed." Magistrate's Decision, Sept. 20, 2022, Finding No. 2 B (i) at 21. In support, the Magistrate attached the child support worksheet he used to calculate child support. Magistrate's Decision, Sept. 20, 2022, appendix.

**{¶10}** Recognizing that the order of $3,000 per month deviated downward from the child support worksheet number of $4,924.28 by about 40%, the Magistrate considered several factors contained in R.C. 3119.23, found that the amount would meet the child's needs and that R.C. 3119.231 was applicable. *Id.* Recognizing the father's business holdings, including farms, dairy cattle and nutrition business, the Magistrate made several findings outlining the father's income. Magistrate's Decision, Sept. 20, 2022, Findings at 21-26.

**{¶11}** Findings were made relating to health insurance, and tax dependency exemptions, and parenting time was adopted for father.

**{¶12}** Father's request for attorneys' fees was denied and the Magistrate applied the "American Rule" to each of the party's request for attorneys' fees finding each party is responsible for his or her own attorneys' fees. Magistrate's Decision, Sept. 20, 2022, Finding No. 6 at 31.

**{¶13}** In all, the Magistrate's Decision contained thirty-three pages with appendices.

**{¶14}** Both mother and father filed objections to the Magistrate's Decision. Transcripts of the Magistrate's evidentiary hearings were ordered and filed, and on February 15, 2023, the trial court issued an amended opinion.

*Trial Court's Judgment*

**{¶15}** The trial court conducted a *de novo* review and affirmed the Magistrate's Decision with respect to the sole residential parent and to the parental time allowed to the father. The trial court found the Magistrate's Decision regarding child support was "thoughtful and attentive to each of the arguments raised by both of the parties in this matter. Amended Opinion, Feb. 15, 2023 at 5. He affirmed the amount of $3,000 per month to be paid by father as child support.

**{¶16}** The trial court changed the date of the modified child support to be retroactive to September 14, 2021, the date on which the trial could have concluded if there had not been extensive delays caused by COVID and the parties' schedules.

{¶17} In short, the Amended Opinion of the trial court approved and adopted all of the Magistrate's Decision except for one – changing the effective date of the modified child support to September 14, 2021. Amended Opinion, Feb. 15 at 9.

{¶18} On April 12, 2023, the trial court ruled on a motion for clarification on how child support arrearage was to be paid.

{¶19} The final judgment entry incorporating the trial court's and magistrate's decisions was entered into the record on May 3, 2023.

{¶20} The appeal of Second Petitioner-Appellant father and Cross Appeal of First Petitioner-Appellee mother followed. Appellant assigns four errors for review and appellee/cross appellant raises six. The Assignments of Error follow:

## ASSIGNMENTS OF ERROR

{¶21} "I.     THE COURT ERRED BY DESIGNATING THE MOTHER THE CHILD'S SOLE RESIDENTIAL PARENT WHEN SHARED PARENTING IS IN THE BEST INTEREST OF THE CHILD.

{¶22} "II.     THE TRIAL COURT ERRED IN NOT AWARDING FATHER EQUAL PARENTING TIME.

{¶23} "III.     THE TRIAL COURT ERRED WHEN ORDERING THAT THE FATHER PAY $3,0000/MO. IN CHILD SUPPORT.

{¶24} "IV.     THE TRIAL COURT ERRED WHEN IT BACKDATED CHILD SUPPORT."

## CROSS ASSIGNMENTS OF ERROR OF MOTHER

{¶25} "V.     THE COURT ERRED IN ESTABLISHING PARENTING TIMES FOR APPELLANT.

**{¶26}** "VI.    THE TRIAL COURT ERRED IN FAILING TO ORDER CHILD SUPPORT BASED UPON THE PARTIES ACTUAL INCOMES.

**{¶27}** "VII.    THE TRIAL COURT ERRED IN FAILING TO UTILIZE AN EARLIER COMMENCEMENT DATE FOR THE REVISED CHILD SUPPORT ORDER.

**{¶28}** "VIII.    THE TRIAL COURT ERRED IN AWARDING APPELLANT THE INCOME TAX EXEMPTION AND CREDIT EVERY OTHER YEAR.

**{¶29}** "IX.    THE TRIAL COURT ERRED IN FAILING TO AWARD APPELLEE ATTORNEY FEES AND LITIGATION EXPENSES.

**{¶30}** "X.    THE TRIAL COURT ERRED IN FAILING TO REQUIRE THE APPELLANT TO ALSO CARRY HEALTH INSURANCE FOR THE CHILD."

**ANALYSIS**

**ASSIGNMENTS OF ERROR I AND II**

**{¶31}** In his first assignment of error, appellant-father claims that the trial court erred in designating appellee-mother the sole residential parent. In his second assignment of error, appellant-father claims that the trial court erred in rejecting his plan for equal parenting time.   We will consider the assignments together.

**{¶32}** We disagree and affirm the decision of the trial court.

*Standard of Review – Abuse of Discretion*

**{¶33}** The standard of review in initial custody cases is whether the trial court abused its discretion.  In *Hartman v. Eggar,* 5th Dist., Fairfield No. 09CA0055, 2015-Ohio-6357, this Court noted that a trial court's discretion in a custody case will be given "paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence." *Id. ¶ 64.*  This Court said*:*

[T]he knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Therefore, giving the trial court due deference, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence. *Davis, supra,* at 418, 674 N.E.2d 1159.

**{¶34}** *Accord, E. S. v. C. S.,* 5th Dist., Stark No. 2023CA00014, 2024-Ohio-206, ¶ 13.

**{¶35}** Abuse of discretion is more than mere error of judgment; an abuse of discretion requires that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

### R.C. 3109.042 applies

**{¶36}** As noted by both parties, R.C. 3109.042 is applicable here where the parties never married. R.C. 3109.042 confers a default status on the mother as the residential parent until an order is issued by the trial court designating the residential parent and legal custodian. In determining custody, R.C. 3109.042 requires the court to treat each parent as standing upon equal footing. In other words, neither party is entitled to a strong presumption in his or her favor. The trial court's custody determination is based on the best interest of the child, R.C. 3109.04(F)(1).

### Best Interests

**{¶37}** R.C. 3109.04(F)(1) states as follows:

**{¶38}** In determining the best interest of a child pursuant to this section ... the court shall consider all relevant factors, including but not limited to:

(a) the wishes of the child's parents regarding the child's care;

(b) if the court has interviewed the child in chambers pursuant to division (B) ... the wishes and concerns of the child, as expressed to the court;

(c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) the child's adjustment to the child's home, school and community;

(e) the mental and physical health of all persons involved in the situation;

(f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights.

(g) whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; …

(i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) whether either parent has established a residence or is planning to establish a residence, outside this state.

**{¶39}** In a custody determination, there is no requirement that a trial court separately address each factor. *Bashale v. Quaicoe,* 5th Dist., Delaware No. 12CAF10 0075, 2013-Ohio-3101, ¶ 45. " 'No one factor is dispositive.' " *Baker-Chaney v. Chaney,* 5th Dist., Holmes No. 16CA005, 2017-Ohio-5548, ¶ 25, quoting *Carr v. Carr,* 12th Dist., Warren Nos. CA2015-02-015, CA2015-03-020, 2016-Ohio-6986, ¶ 22. The trial court has discretion to weigh any and all factors. *Id.*

**{¶40}** Father claims that the trial court did not adequately consider these factors in determining that mother should be the sole residential parent and legal custodian and failed to acknowledge his equal footing in the initial custody determination. We disagree.

**{¶41}** In our review of the record and the evidence presented, we find the Magistrate did, indeed, consider the mother and father on equal footing specifically citing to R. C. 3109.042, Magistrate's Decision, Sept. 20, 2022 at 4-5. The Magistrate specifically stated in its decision that it considered all the factors in R.C. 3109.04(F)(1). Indeed, he spent a considerable amount of time in his decision discussing the factors and concluded that the child's best interest is best served with the mother being named the sole residential parent and legal custodian, with the father being granted extended parenting time. Magistrate's Decision, Sept. 20, 2022 at 12-13. The Magistrate was particularly concerned with the parties' inability to cooperate and found that the mother

was more likely to honor and facilitate court approved parenting time schedule. Magistrate Decision at 17. In rejecting father's plan for shared parenting as an alternative to sole custody, he noted the unlikelihood that such a plan would succeed, given that father and his witnesses "pointedly assassinated the First Petitioner-mother's character and reputation in their testimony." Magistrate's Decision, Sept. 20, 2022 at 20.

**{¶42}** The trial court, upon the parties' objections, conducted an independent review and concurred with and adopted the Magistrate's Decision in this regard, Judgment Entry, May 3, 2023; Amended Opinion, Feb. 15, 2023.

*Shared Parenting*

**{¶43}** In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 3109.04(F) [best interests of child], the factors enumerated in R.C. 3119.23 [deviation], and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other ...

(e) The recommendation of the guardian ad litem of the child …

**{¶44}** R.C. 3109.04(F)(2).

**{¶45}** The Magistrate's Decision and the trial court's judgment entry on the parties' objections to the Magistrate's Decision thoroughly and independently examined the record and the best interest considerations under R.C. 3109.04(F).

**{¶46}** In rejecting shared parenting, the most telling and obvious factor here was the parties' inability to cooperate and make decisions jointly with respect to the child. The record is replete with instances of vitriolic behavior by both parties to the point where the parties do not have the ability to cooperate at this time. So, too, the guardian ad litem recommendation negated a shared-parenting plan. While the record establishes that both parties love their daughter and she is well adjusted and healthy, a shared parenting plan was doomed to fail. Such a plan is not in the child's best interests.

**{¶47}** We do not find the trial court abused its discretion in designating mother as sole residential parent and legal custodian of the child and rejecting the father's plan for shared parenting time. Appellant's assignments of error one and two are overruled.

**III**

**{¶48}** In his third assignment of error, appellant-father contends that the trial court erred when it held that he was obligated to pay $3,000 per month in child support. In support, appellant makes two arguments. One, the trial court erred when it did not apply the "cap" on the child support worksheet. According to father, he should only be paying $973.74 per month. He reached this figure by applying a 40% deviation to the maximum guideline amount with "cap enabled" of $1,622.57. Second, he argues that a reduced amount in monthly child support would meet the child's need and middle-class standard of living. We reject both arguments and find that the trial court correctly applied R.C. 3119.04.

*Standard of Review – Abuse of Discretion*

**{¶49}** Child support orders are reviewed under an abuse of discretion standard. *Morrow v. Becker,* 138 Ohio St. 3d 11, 2013-Ohio-4542, ¶ 9; *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). If, in exercising its discretion, the trial court's reasoning is sound, a reviewing court will not disturb its judgment. *AAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 552 N.E.2d 597 (1990). The abuse of discretion standard also applies to the decision of the trial court as to the issue of deviation in the amount of child support owed by an obligor. *Gulley v. Gulley,* 5th Dist., Stark No. 2018 CA 00013, 2018-Ohio-4192, ¶ 26.

*High Income Case*

**{¶50}** R.C. 3119.04 governs the child support obligations of high-income earners and states if the combined annual income of both parents is greater than the maximum annual income listed on the basic child support schedule, the court shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The current child support schedule begins at an income of $8,400 and increases at $600 increments through a guideline income of $300,000. R.C. 3119.021. Relevant in this case, for one child, the income range is more than $258,292.92 but not more than $336,467.04. *Id.* Appellant-father argues that support should be limited as if the combined income of both parents was not more than $336,467.04, and the trial court erred when it used the actual extrapolated figure for income over $336,467.04. (*Appellant's brief at 26*).

**{¶51}** In this appeal, father does not dispute the amount of gross income attributed to him of over one million dollars. (*Child Support Worksheet attached to appellant's brief*). While he makes mention that the trial court did not correctly calculate his gross income, he makes no argument or demonstrates how the trial court erred. Indeed, the Magistrate spent several pages of his decision outlining the factors he considered in calculating the income of the father.

**{¶52}** In this case, the combined income of both parents is greater than the maximum annual income listed on the child support schedule of $336,467.04. Child support guideline calculations are not available by statute in situations where parents' combined income exceeds $336,467.04 for one child.

**{¶53}** Therefore, a trial court in a high-income case such as this is not required to use the child support figure derived when the "cap" is used from the child support This Court has held that it is error when a trial court automatically places a "cap" on child support at the amount of child support set forth in the child support guidelines; in this case $336,467.04. A trial court may award more than such amount on a case by case basis after consideration of the needs and standard of living of the parents involved. *Deasey v. Deasey,* 5th Dist., Delaware No. 02CAF09044, 2003-Ohio-3576, ¶ 13

**{¶54}** In this case, the trial court extrapolated the actual income reported by the parents and reached a figure of $4,924.28 in monthly child support. "The Magistrate finds that amount of child support is the result received when the "cap" on the child support work sheet program used by the Court is 'turned off' or is 'disabled." Magistrate's Decision, Sept. 20, 2022 at 22. The Magistrate then deviated from this figure by 40.9 percent under R.C. 3119.23 (C), (E) and (G) and R.C. 3119.231. *Id.*

{¶55} We find that the trial court did not abuse its discretion in disabling the "cap" under the child support guidelines and extrapolating a child support figure based on actual income of the parties.

*Needs of child and standard of living*

{¶56} Appellant-father also argues that the child's needs and middle-class standards of living were met when he was paying $300 per month in child support. (*Appellant's brief at 24*). He relates the testimony at the evidentiary hearings that both parents live in spacious homes and provide the child with all the necessaries of life and then some, recounting the vacations the child takes with her mother and the expensive extracurricular activities the child enjoys, all under the existing child support order of $300 per month. (*Appellant's brief at 23-24*).

{¶57} As noted by appellee-mother, the trial court did consider the needs of the child when it deviated downward from the amount of $4,924.28 and recommended monthly child support of $3,000.

{¶58} As found by the trial court, the Magistrate's Decision was thoughtful and thorough, considering the needs of the child and her best interests. Amended Opinion, Feb. 15, 2023 at 3. "Although it may be true that the child's standard of living has been modest, and the child's basic needs have been met adequately, under the prior court orders, it doesn't necessarily follow that it was appropriate given the circumstances of the parties and the child." *Id*

{¶59} The trial court did not abuse it discretion in the amount of child support it ordered obligor-father to pay. Appellant's third assignment of error is overruled.

**IV**

{¶60} In his last assignment of error, appellant-father claims that the trial court erred in backdating child support.

{¶61} Again, the issue of retroactivity of a child support order is within the sound discretion of the trial court. *Meyer v. Meyer,* 5th Dist., Licking No. 2006CA00145, 2008-Ohio-436, ¶ 38.

{¶62} When the trial court performed its independent review of the Magistrate's Decision, it affirmed the decision with one exception – the retroactivity of the modified child support order.   It changed the date from the final judgment filing date to September 14, 2021.

{¶63} This Court has held that absent special circumstances, an order of a trial court modifying child support should be retroactive to the date the parties received notice of the request for modification. *Wayco v. Wayco,* 5th Dist., Stark No. 1998CA00279, 1999 WL 174918 (March 8, 1999) *3. The *Wayco* Court reasoned that this standard would provide the best way of making the decision predictable and fair, allowing the parties to adjust their financial lives around the number. The general rule is also set forth in R. C. 3119.84 ("A court with jurisdiction over a court support order *m*ay modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.") [Emp. Added].

{¶64} In this case, the trial court noted this general rule, but found that the case involved special circumstances. It cited the significant delays caused by the pandemic and the parties circumstances made the date of notice of the request for modification –

November 20, 2020 – inappropriate. Accordingly, the trial court found the date of September 14, 2021, the date the trial should have concluded, as the more reasonable and appropriate date. We disagree.

**{¶65}** This case involved almost a three-year delay between the time the motion for a modification was filed in November, 2020 to the final resolution on May 3, 2023. We agree with the trial court that this case involved special circumstances and the trial court did not abuse its discretion in finding September 14, 2021 as the date when the child support modification took effect.

**{¶66}** Appellant's fourth assignment of error is overruled.

**{¶67}** We now turn to the cross appeal of appellee/cross appellant-mother.

**CROSS APPEAL V**

**{¶68}** In the mother's first assignment of error, she contends that the trial court erred in establishing parenting times for appellant-father.

**{¶69}** Not satisfied with the determination that she is the sole residential parent and legal custodian, she argues that the trial court abused its discretion when it deviated somewhat from the visitation schedule set forth in Local Rule 19.0 [Parenting Times] of the Licking County Court.

**{¶70}** We find no abuse of discretion for the same reasons that we rejected appellant father's argument on custody and shared parenting. (Assignments of Errors Nos. 1 and 2).

**{¶71}** The record demonstrates that while the parents separated shortly after the birth of M.I.B., appellant-father remained extensively in his child's life. There is no dispute that both parents love their daughter. The evidence includes the testimony at the hearing,

the report and testimony of the guardian ad litem and the in-camera interview of the child. The record reflects that M.I.B. wishes to remain in close contact with both of her parents. She has a close relationship with her half siblings, the wife of the father and her paternal grandmother. Notably, the trial court rejected mother's request for first refusal, recognizing that such a right would undermine the father's role in his daughter's life and potentially usurp attempts to spend time with his family.

**{¶72}** The Magistrate who heard the testimony, and the trial court that independently reviewed the Magistrate's decision correctly found that it is in the best interests of M.I.B. to have a relationship and companionship with both her parents. While rejecting the shared parenting plan submitted by the father, it recognized the child's needs to have an extended time with her father and father's family.

**{¶73}** Cross Appellant's assignment of error is overruled.

### CROSS APPEAL VI

**{¶74}** In this assignment of error, mother contends that the trial court erred when it failed to award monthly child support of $4,925.28, the amount shown on the worksheet when child support was computed. [2] As discussed in response to father's argument that $3,000 is too much, this Court reviews the trial court's order under an abuse of discretion. *Booth v. Booth,* 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989).

**{¶75}** As noted above, when the combined annual income of both parties exceeds $336,467.04, a child support worksheet is prepared, but there is no presumption that the

---

[2] The trial court in its Amended Opinion on the Magistrate's Decision calculated the monthly support as $5,053.61. Amended Opinion, Feb. 15, 2023 at 5.

worksheet amount is appropriate.  Rather, the trial court considers the amount on a case-by-case basis considering the needs and standard of living of the child.

**{¶76}**  As noted by the trial court, the awarded amount of $3,000 per month is not a deviation from the child support guidelines but rather considerations made on a case by case basis.

**{¶77}**  The Magistrate carefully considered the needs of the child, the parenting time schedule granted to the father which amounted to approximately 40 percent, and awarded child support of $3,000 per month.  The Magistrate awarded over 90 overnight-parenting times with the child per year. Magistrate's Decision, Sept. 20, 2022 at 22.

**{¶78}**  Mother is not entitled to the "extrapolated" worksheet amount, given the best interest of the child and the parental time ordered for father. The trial court, therefore,  did not abuse its discretion and the assignment of error is overruled.

### CROSS APPEAL VII

**{¶79}**  In this assignment of error, mother argues that the commencement date for the revised child support order should be either October 14, 2019 or November 23, 2020. It is unclear from mother's argument which date she claims is appropriate.  October, 2019 is when the father brought his motion for parental rights and shared parenting.  November, 2020 is when mother filed her motion to increase child support.

**{¶80}**  The trial court determined that the monthly child support payment of $3,000 should be retroactive to September 14, 2021, the date the case should have been concluded on the second day of trial.

**{¶81}**  As stated above, we find no abuse of discretion in the retroactive date determined by the trial court. Accordingly, mother's assignment of error is overruled.

**CROSS APPEAL VIII**

**{¶82}** In this assignment of error, mother contends that the trial court erred in awarding alternate years for tax exemption.

**{¶83}** The Magistrate found that before 2019, when father filed his motion for custody and/or shared parenting, the parties agreed the right to claim the child in alternate years.  The Magistrate continued that precedent and the trial court found no error in that determination. Amended Opinion, Feb. 15, 2023 at 7.

**{¶84}** We review a trial court's decision allocating tax exemptions for dependents under an abuse of discretion standard.  *Hughes v. Hughes,* 35 Ohio St.3d 165, 518 N.E.2d 1213 (1988); *Doyle v. Metzger,* 5th Dist., Stark No. 2015CA00002, 2015-Ohio-3738, ¶ 25. In order to find an abuse of discretion, we must find that the trial court's decision in awarding the exemption to mother and father in alternate years was arbitrary, unconscionable or unreasonable and not merely an error or law or judgment.  *Blakemore, supra.*

**{¶85}** R.C. 3119.82 provides that if the parties are not in agreement the court in its order may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purpose only if the court determines that this furthers the best interests of the children.  It further provides that in cases which the parties do not agree, the court shall consider any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit and any other relevant fact concerning the best interest of the children.

**{¶86}** "The best interest of the child is furthered when the allocation of the tax exemption to the noncustodial parent produces a net savings for the parents." *Doyle v. Metzger, supra,* at ¶ 29 citing *Nist v. Nist,* 5th Dist., Delaware No. 02CAF11060, 2003-Ohio-3292.

**{¶87}** The Magistrate, fully aware of the statute, considered the tax exemption question with particular consideration to "any other relevant factor concerning the best interest of the children." Magistrate's Decision, Sept. 20, 2022 at 28. The trial court independently reviewed that Decision and adopted it. Amended Opinion, Feb. 15, 2023; Judgment Entry, May 3, 2023.

**{¶88}** We find no abuse of discretion. The mother's assignment of error is overruled.

### CROSS APPEAL IX

**{¶89}** In this assignment of error, mother claims that the trial court erred in failing to award her attorneys' fees and litigation expenses. The record shows that father was ordered to pay mother $2,500 for expert witness fees. The record also shows that father's request for attorneys' fees was denied by the trial court. Notably, the father's request for attorneys' fees cited the same statute, R.C. 3105.73(B), as mother cites as authority for such request. The Magistrate questioned whether the statute was applicable, given that this case arose out of a parentage action and not an action for divorce, dissolution, legal separation, or an annulment of marriage or an appeal of that motion or proceeding. Magistrate's Decision, Sept. 20, 2022 at 29. Likewise, we question mother's use of R. C. 3105.73(B) here.

**{¶90}** This Court has held that the request for attorney fees is vested in the sound discretion of the trial court. *Dotts v. Schaefer,* 5th Dist., Tuscarawas No. 2014 AP 06 0022, 2015-Ohio-782, ¶ 17 ("The resolution of a request for attorney fees is vested in the sound discretion of the trial court and will not be overturned upon review absent a showing of an abuse of discretion." *Accord, Brown v. Brown,* 5th Dist., Stark No. 2017CA00017, 2017-Ohio-8175, ¶ 58.

**{¶91}** When the father asked for attorneys' fees, the Magistrate applied the "American Rule" regarding attorneys' fees that holds that each party is responsible for its litigation expenses.

**{¶92}** Mother requested attorneys' fees in a motion filed on February 7, 2020. It was set for oral hearing and on February 27, the Magistrate ordered father to pay $5,000 towards mother's financial expert, which was later amended to $2500. At the final hearing, the Magistrate considered the evidence presented, in light of the relevant factors and determined that it would not be appropriate to grant the request for attorneys' fees of either mother or father.

**{¶93}** After objections to the Magistrate's Decision were heard, the trial court considered the issue of attorneys' fees for mother as the custodial parent. It rejected the payment of attorneys' fees to either parent saying:

> As indicated above, the delays which occurred during the trial of this matter were due to COVID 19 and a funeral for which neither party was specifically at fault. However, both parties had the opportunity to resolve this matter through mediation, but failed to reach an agreement in mediation.

Instead, the parties chose to pursue these matters on a contested basis and both parties incurred substantial fees as a result. In review of all of the evidence produced at trial, the court cannot find error in the Magistrate's decision that an additional award of attorney fees to either party would not be reasonable.

**{¶94}** Amended Opinion, Feb. 15, 2023 at 8. *See also* Judgment Entry, May 3, 2023 at 24.

**{¶95}** This Court does not find that the trial court abused its discretion. Mother's assignment of error is, therefore, overruled.

### CROSS APPEAL X

**{¶96}** In her last assignment of error, mother contends that the trial court erred in failing to order the father to obtain duplicate health insurance for the child.

**{¶97}** Again, the argument is reviewed by this Court under an abuse of discretion standard.

**{¶98}** The Magistrate's Decision provided as follows:

(ii) Health Care Coverage for the Child

Based upon the relevant evidence admitted into the record, the Magistrate determines that it is appropriate for an order to be entered providing for the First Petitioner-Mother to maintain private health care insurance coverage for the child, provided such coverage is available to her at a 'reasonable cost' and is 'accessible' as these terms are defined by Revised Code 3119.29. The Magistrate finds from the evidence admitted

into the record that the First Petitioner-Mother has such insurance coverage in effect for the child at this time.

**{¶99}** Magistrate's Decision, Sept. 20, 2022 at 27.

**{¶100}** As to extraordinary medical expenses, the Magistrate ordered the father to pay ninety percent of the extraordinary medical expenses as defined by R.C. 3119.01(C)(7).

**{¶101}** In its Amended Opinion/Judgment Entry independently reviewing the objections to Magistrate's Decision, the trial court found that the calculation in determining child support was based on the determination that mother would maintain private health care insurance. Amended Opinion, Feb. 15, 2023 at 7.

**{¶102}** Mother argues that by ordering the father and mother to both maintain health insurance, this would "ensure that should either party lose health insurance, that the child would be covered." *Cross Appeal Brief at 29.* This argument fails to consider the order of the trial court which states that if medical insurance is no longer available to mother, alternative options are available.

**{¶103}** This Court finds that the trial court did not abuse its discretion in affirming the decision of the Magistrate. The record shows that mother maintained health insurance for the child, and this fact was taken into consideration in the determination of monthly child support. In the event, such medical insurance is no longer accessible at a reasonable cost, the matter may be reopened based on new considerations. The record shows that the father is self-employed and medical insurance that would duplicate the insurance maintained by the mother is unnecessary. So, too, father was ordered to pay

ninety percent of all extraordinary medical costs, $30.24 per month in cash medical support and the sum of $600 per month on the arrearage.

{¶104} This Court overrules mother's assignment of error.

## CONCLUSION

{¶105} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Domestic Relations Division, Licking County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/kt 0222